UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FLORINE HICKS,

        Plaintiff,

  v.

                        Case No. 23-cv-1719-pp

MILWAUKEE COUNTY TRANSPORT SERVICE, *et al.*,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT AND ORDERING PLAINTIFF FILE TO AN AMENDED COMPLAINT**

      On December 26, 2023, the plaintiff—who is representing herself—filed a complaint, alleging that the defendants discriminated against her and subjected her to harassment and a hostile workplace because of her disability and age, and that the defendant wrongfully terminated her employment. Dkt. No. 1. She also filed a motion to proceed without prepaying the filing fee. Dkt. No. 2.

      To allow a plaintiff to proceed without prepaying the filing fee, the court first must decide whether the plaintiff can pay the fee; if not, it must screen the complaint to determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i).

1

## I. Plaintiff's Ability to Pay the Filing Fee

The plaintiff's request to proceed without prepaying the filing fee says that she is unemployed, single and does not have any dependents to support. Dkt. No. 2 at 1. Under "Source of income," the plaintiff says that in the last twelve months she has received $900 in Social Security. Id. at 2. The plaintiff left the entire "Expenses" section of her form blank, leaving the court to wonder whether she makes monthly rent, mortgage, car or credit card payments, or whether she pays for groceries, clothing, medical costs, utilities, cell phone or internet bills, etc. Id. As for "Property," the plaintiff indicates that she owns a 2006 Toyota Sienna with an approximate current value of $2,500, does not own her home and has $200 in "cash or checking, savings, or other similar accounts." Id. at 3. Under "Other Circumstances," she explains, "I have had two knee replacement. I am looking to go back to work." Id. at 4.

While it is not clear how the plaintiff is living without any monthly expenses—perhaps she has family or friends who provide her with the basics of daily living (food, utilities, transportation costs, etc.)—based on the information in the request, the court concludes that the plaintiff does not have the ability to pay the filing fee. This does not mean that the plaintiff does not owe the filing fee; the Seventh Circuit has held that "every . . . person who proceeds [without prepaying the filing fee]" is "liable for the full fees," because "all [28 U.S.C.] §1915(a) does for any litigant is excuse the pre-payment of fees." Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997); see also Rosas v. Roman Catholic Archdiocese of Chi., 748 Fed. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C.

2

§ 1915(a), a district court may allow a litigant to proceed 'without prepayment of fees,' but not without ever paying fees.").

## II. Screening the Complaint

### A. Federal Screening Standard

The court next must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

### B. The Plaintiff's Allegations

The complaint names five organizational defendants: Milwaukee County Transport Service (MCTS), Amalgamated Transit Union (the Union),

Amalgamated Transit Union Local 998 (Local 998), the Labor and Industry Review Commission and the Department of Workforce Development UI Division of Legal Affairs. Dkt. No. 1 at ¶¶2-4, 7-8. The complaint also names six individual defendants: Raymond Ma, Leann M. Minor, Michael Bautch, Mike Brown, Mick Jarvic and Nate Holton. Dkt. No. 1 at ¶¶5-6, 9-12. The plaintiff alleges that as of "July 20, 2019, [she] was employed by MCTS as a bus operator of Local 998." Id. at ¶13.

Under the heading, "**DISCRIMINATED AGAINST EQUAL EMPLOYMENT OPPORTUNITIES**," the plaintiff alleges the following:

14. On November 17, 2020, MCTS had adopted the U.S. Government protocol of the CDC of Disease Control, that all citizens must wear a face mask doing the COVID-19 PANDEMIC crisis, and to follow these safety habits: 1) wear a face mask, 2) stay six feet apart from others, 3) avoiding crowds, and 4) making sure indoor space were well ventilated. MCTS legally taken it as their own, making it mandatory that all busses play these three-tape recording doing the full shifts of each operator: (1) Enter the front door and exit the back door, (2) Passing the bus operators only once, and (3) Wear your face mask always while on the bus. Local 998 was aware of the danger in having those recordings be played, went as far as to quote them, yet not supporting the Plaintiff in her defense of her following the instruction given by MCTS to play the tapes.

15. That afternoon on November 17, 2020, a passenger signaled to the Plaintiff they wanted to get off. Plaintiff made the stop and so doing open the rear door as instructed by MCTS. The passenger was sitting in the back of the bus. The passenger bypassed the rear door and walked up to the front door and demanded the door be open. Plaintiff refused, **the passenger then pulled out a gun and threatened to shoot the gun.**

16. Because Plaintiff conducted the instructions given by MCTS having all passengers exit the rear door, MCTS fired Plaintiff.

4

> Other operators doing that same period had guns pulled on them and were not fired.

Dkt. No. 1 at ¶¶14-16 (emphasis in original).

Under the heading, "**DISCRIMINATED BECAUSE OF A DISABILITY CONDITION**," the plaintiff alleges the following:

> 17. On August 27, 2020, Plaintiff presented to MCTS a copy of her medical records listing her disability. On September 29, 2020, an emergency arose. When Plaintiff addressed that emergency **MCTS suspended Plaintiff for three days**.

Dkt. No. 1 at ¶17 (emphasis in original).

Under the heading, "**DISCRIMINATION BECAUSE OF AGE**," the plaintiff alleges the following:

> 18. Doing the COVID-19 crisis, the Government brought to the attention of the world the need to give careful thought and consideration to older people because of being at a higher risk of contracting COVID-19. On April 15, 2020, Plaintiff went into an anxiety attack because of the number of passengers that were boarding her bus. One of the passengers asked Plaintiff a question, being unable to think at that moment, Plaintiff was not able to answer the passenger, the Supervisor written Plaintiff up.

Dkt. No. 1 at ¶18.

Finally, under the heading, "**UNFAIRNESS WORKPLACE AND HARASSMENT**," the plaintiff alleges the following:

> 19. Aggressive was as if smoke lingering's in the workplace air. Doing the 17 months of employment with MCTS, and having the supervisor continue writing Plaintiff up for over 20 times being suspended many times all the while Plaintiff is asking for help through MCTS program that other employees were allowed to attend but was denied.
>
> 20. And while Plaintiff had been warned about her performance, Plaintiff was working to the best of her ability. Failure to meet the MCTS expectations was not substantially within the

5

> Plaintiff's control. It was nothing but a revolving door under pressure and intimidation from the supervisor, MCTS and the Union. As a result of Plaintiff's wrongful dismissal, Plaintiff is having to suffer tremendously financial losses, humiliations', disgrace, and shame.
>
> **WHEREFORES,** Plaintiff's demands and in the name of law, judgments against the Defendants jointly and severally, for Plaintiff's damages, together with statutory costs and such further relief as may be considered proper.

Dkt. No. 1 at ¶¶19-20 & p.6.

    C.    <u>Analysis</u>

Although the plaintiff names eleven individuals and/or entities as defendants, her complaint contains allegations against only three of those defendants: MCTS, the Union and Local 998. The complaint contains no allegations against defendants Labor and Industry Review Commission, Department of Workforce Development, Ma, Minor, Bautch, Brown, Jarvic, or Holton. The complaint makes allegations against certain "supervisors." Dkt. No. 1 at ¶¶18 ("Plaintiff was not able to answer the passenger, the *Supervisor* written Plaintiff up."); 19 ("Doing the 17 months of employment with MCTS, and having the *supervisor* continue writing Plaintiff up for over 20 times."); 20 ("It was nothing but a revolving door under pressure and intimidation from the *supervisor*, MCTS and the Union."). But the plaintiff does not provide the supervisors' name or names. <u>Id.</u>

    The plaintiff appears to allege claims of discrimination based on disability and age. The Americans with Disabilities Act (ADA) prohibits employment discrimination on the basis of disability. 42 U.S.C. §12112. To allege disability discrimination under the ADA, the plaintiff must allege that (1)

6

she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) she suffered from an adverse employment action because of her disability. Hoppe v. Lewis Univ., 692 F.3d 833, 839 (7th Cir. 2012) (citing Nese v. Julian Nordic Const. Co., 405 F.3d 638, 641 (7th Cir. 2005)). The Age Discrimination in Employment Act (ADEA) prohibits employment discrimination on the basis of age. 29 U.S.C. §623. To establish a *prima facie* case of age discrimination under the ADEA, the plaintiff must show that (1) she was in the protected age group of forty or older, (2) she was performing her job satisfactorily, (3) she was discharged and (4) substantially younger, similarly situated employees were treated more favorably. Chiaramonte v. Fashion Bed Grp. Inc., 129 F.3d 391, 398 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998).

The plaintiff's complaint does state whether she is disabled within the meaning of the ADA or what her specific disability is, nor does it allege that she was qualified to perform the essential functions of her job with MCTS or that she was terminated because of a disability. The complaint also does not say whether the plaintiff is older than forty and whether she was performing her job satisfactorily, nor does it allege that substantially younger, similarly situated employees received more favorable treatment.

The plaintiff also may be trying to allege claims of hostile workplace and harassment based on age and/or disability. To allege a hostile workplace/harassment claim based on age under the ADEA, the plaintiff must

7

allege that (1) she was subject to unwelcome harassment; (2) the harassment was based on her age; (3) the harassment was sufficiently severe or pervasive that it altered the conditions of her employment and created a hostile or abusive atmosphere; and (4) there is a basis for employer liability. Tyburski v. City of Chicago, 964 F.3d 590, 6001 (7th Cir. 2020). To allege a hostile workplace/harassment claim based on disability under the ADA, the plaintiff must allege that (1) she was subject to unwelcome harassment; (2) the harassment was based on her disability; (3) the harassment was sufficiently severe or pervasive, both subjectively and objectively, so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. Brooks v. Avancez, 39 F.4th 424, 441 (7th Cir. 2022). The court cannot tell from the complaint whether the plaintiff intends to bring these types of claims.

Before a plaintiff may file claims under the ADA and the ADEA in federal court, she first must exhaust her administrative remedies by filing charges with the Equal Employment Opportunity Commission, and she must receive from the EEOC a right to sue letter. Whitaker v. Milwaukee County, 772 F.3d 802, 812 (7th Cir. 2019) (addressing the ADA); Reynolds v. Tangherlini, 737 F.3d 1093, 1101 (7th Cir. 2013) (addressing the ADEA). The complaint does not say whether the plaintiff filed EEOC charges, or whether she received a right-to-sue letter from the EEOC.

Finally, the plaintiff appears to allege that MCTS improperly terminated her employment. To state a federal claim for improper termination of

8

employment, the plaintiff must allege a violation of the due process clause under 42 U.S.C. §1983. To sustain a claim for violation of federal due process rights, the discharged employee first must establish that she had a property interest in continued employment. Schultz v. Baumgart, 738 F.2d 231, 234 (7th Cir. 1984). After establishing the existence of a property right, the discharged employee must demonstrate that she was discharged without the procedural protections conferred by the due process clause. Id. at 235. Although the "precise scope of those protections in the context of public employment is far from clear, . . . at a minimum, they include prior notice of the discharge and the reasons for it, and a meaningful opportunity to respond prior to termination." Id. To the extent the plaintiff intends to plead a claim for wrongful termination against MCTS, she must establish that she had a property interest in her employment and was denied the procedural protections owed to her.

The court will give the plaintiff an opportunity to amend her complaint to try to clearly state a claim for which a federal court may grant relief. The court is enclosing with this order a copy of its amended complaint form. The plaintiff must list the case number for this case—23-cv-1719—on the first page. She must list in the caption of the amended complaint all the defendants she wants to sue. She should use the spaces on pages two and three to explain the key facts that give rise to the claims she wishes to bring, and to describe which defendants she believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five

9

additional sheets of paper, double-spaced so that the court can read them. The plaintiff must provide the details the court has identified that are missing from the original complaint. The amended complaint will take the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to her original complaint. She must repeat in the amended complaint any of the facts from the original complaint that she believes are necessary to her claims. If the court does not receive an amended complaint from the plaintiff by the date stated below, the court may dismiss this case.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the plaintiff must file an amended complaint that complies with the guidance in this order. The plaintiff must file the amended complaint in time for the court to *receive* it by the end of the day on **July 19, 2024**. If the court does not receive an amended complaint (or a request for more time to file one) by the end of the day on July 19, 2024, the court may dismiss the case without further notice or hearing.

Dated in Milwaukee, Wisconsin this 17th day of June, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**