UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FLORINE HICKS,

         Plaintiff,

  v.

Case No. 23-cv-1719-pp

MILWAUKEE COUNTY TRANSPORT SERVICE,
AMALGAMATED TRANSIT UNION LOCAL 998,
LEANN M. MINOR, MIKE BROWN,
RAYMOND MA, MICHAEL BAUTCH,
MICK JARVIC and NATE HOLTON,

         Defendants.

---

## ORDER SCREENING AMENDED COMPLAINT AND DISMISSING CASE

---

On December 26, 2023, the plaintiff—who is representing herself—filed a complaint against the defendants alleging employment discrimination and wrongful termination arising out of her employment with Milwaukee County Transport Service. Dkt. No. 1. The plaintiff also filed a motion to proceed without prepaying the filing fee. Dkt. No. 2. The court granted that motion and screened the complaint. Dkt. No. 4. In an order dated June 17, 2024, the court determined that the complaint failed to state a claim for employment discrimination or wrongful discharge. Id. at 6–9. The court gave the plaintiff an opportunity to amend her complaint by July 19, 2024. Id. at 10.

On July 15, 2024, the court received from the plaintiff an amended complaint. Dkt. No. 5. This order screens the amended complaint and

1

dismisses the case for failure to state a claim on which this federal court can grant relief.

I.      **Screening the Amended Complaint**

   A.    Legal Standard

The court must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). The court must "liberally" construe documents filed by self-represented litigants. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). A complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. However, the court is "not charged with seeking out legal 'issues lurking within the confines' of the [self-represented] litigant's pleadings, and the court's duties certainly do 'not extend so far as to require the court to bring to the attention of the pro se litigant or to decide the unraised issues.'" Kiebala v. Boris, 928 F.3d 680, 684-85 (7th Cir. 2019) (quoting Caruth v. Pinkney, 683 F.2d 1044, 1050 (7th Cir. 1982).

Even though courts liberally construe filings from self-represented litigants, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff does not need to plead every fact supporting her claims; she needs only to give

the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64.

B. The Plaintiff's Allegations

The amended complaint identifies Milwaukee County Transport Service ("MCTS") and Amalgamated Transit Union Local 998 ("Local 998") as defendants, as well as MCTS employees Raymond Ma, Leann Minor, Mick Jarvic and Nate Holton; Local 998 employee Michael Bautch; and Mike Brown, an employee of both MCTS and Local 998. Dkt. No. 5 at 1–2.

The plaintiff alleges that MCTS hired her as a bus operator in July 2019 and that she became a member of Local 998 at that time. Id. at 3. She states that she is sixty-six years old and that there were medical records on file of her being disabled. Id. at 8. The plaintiff alleges that from the date of her hire, the defendants "displayed in the workplace an air of [aggression]" toward her. Id. at 4. She appears to allege that she received twenty disciplinary "write-ups" during the seventeen months of her employment with MCTS. Id.

3

The plaintiff highlights three specific incidents that occurred during her employment for which she believes she received improper discipline. Id. at 5, 7–8. The plaintiff alleges that on April 15, 2020, during "the high point of the COVID-19," she was experiencing anxiety about contracting COVID-19 at her age. Id. at 5. She alleges that "that split second" that she was experiencing that anxiety, a passenger asked her for information, but that she was unable to answer it. Id. She alleges that her supervisor, Leann Minor, issued her a rule violation for "Discourtesy/Rudeness." Id.

Next, the plaintiff alleges that on November 17, 2020, MCTS adopted a COVID-19 protocol which required citizens to wear face masks during the pandemic. Id. at 3. The plaintiff says that "[e]mployees were instructed" to wear masks, socially distance, avoid crowds and make sure indoor spaces were ventilated. Id. MCTS "made it mandatory" for operators to "play three recordings during full shift: 1) Enter the front door and exit the back door; 2) [Pass] the operator only once; and 3) Wear your face mask while on the bus." Id. The plaintiff contends that on November 17, 20920, when she "asked [a] passenger to exit the rear door, as was instructed to do," she was "exercising her Christian beliefs as one of Jehovah's Witnesses" by following MCTS rules. Id. at 7. The plaintiff alleges that the defendants were aware of the rules, but that "when the young man pulled out the gun threatening to shoot it, the defendants spontaneously developed amnesia wanting to forget them that was governing all its operators at that time." Id. at 4 (citing Dkt. No. 5-1 at 4–5 (police report regarding incident)). According to the attached police report, the

4

plaintiff instructed the passenger to exit through the back door of the bus "between five and ten times" before the passenger drew the firearm. Dkt. No. 5-1 at 4. The passenger pointed the firearm at the front of the bus and the door and "began yelling that he would shoot the door off of [its] hinges" if the plaintiff did not open the front door of the bus. Id. The passenger eventually relented and exited the rear door of the bus. Id. The plaintiff alleges that "they issued Rule No. 15, Improper Conduct." Id. at 8.

The plaintiff alleges that on December 7, 2020, she stopped to pick up a passenger; she alleges that the passenger "went ahead into taking several face masks, dropping them onto the floor of the bus." Id. at 5. The plaintiff says that she asked the passenger to refrain from doing that; the plaintiff says that she felt compelled to do so based on MCTS company rule 50. Id. The plaintiff alleges that MCTS issued her a Rule No. 46 "Discourtesy/Rudeness" violation as a result. Id. MCTS terminated the plaintiff on December 7, 2020. Dkt. No. 5 at 6. The plaintiff alleges that "[e]ach defendant supported [her] wrongful termination . . . ." Id. at 4.

The plaintiff alleges that other employees were treated differently than she. Id. at 3, 7–8. She assets that news media accounts will show "the danger of demanding the passengers to always wear their mask and exit the rear door," and she says that some of these encounters were "deadly." Id. at 3. The plaintiff alleges that "some operators who meet danger were given training, counseling and a different job," but that instead of giving her this help, the defendants fired her. Id. She alleges that MCTS gave her only a copy of "its

5

rules outlining penalties for behavioral violations," but did not give her any training for emergency situations, such as others had received during the COVID-19 pandemic. Id. at 8. The plaintiff alleges that although Nate Holton (an MCTS employee whom she describes as the "directory") stated at a February 24, 2021 grievance meeting on that the plaintiff had "already received added training," the plaintiff alleges that the union "knew that claim was not a truthful statement but allowed it to go forward;" she says that all the while, she was asking for help "through an MCTS program that other employees were allowed to attend but was denied." Id. at 4-5. The plaintiff also alleges that she had coworkers who "graduated at the same time she did [and] became addicted to the use of alcohol and street drugs while running the bus;" she asserts that these individuals were "removed from driving given treatments and after recovery were given their jobs back." Id. at 8. She says that the state of Wisconsin has an anger management treatment, "having this process of dealing with or controlling people." Id. The plaintiff says that MCTS failed in its responsibility to her in not getting her the help she needed, as it had done with other employees. Id. The plaintiff alleges that MCTS has "admitted time and time again, they saw signs of problems which they were a witness but offered only to fire the Plaintiff does not help." Id. The plaintiff does not explain what "problems" the defendants saw signs of, and other than mentioning medical records of her being disabled, does not describe her disability.

As noted, the plaintiff alleges that each of the defendants "supported" her "wrongful termination." Id. at 4. The plaintiff alleges that Local 998 exhibited

6

bad faith and committed a breach of contract. Id. at 6. The plaintiff contends that Local 998 was required to notify her of any charges against her within seventy-two hours. Id. (quoting Dkt. No. 5-1 at 11). She cites a letter sent by Local 998 informing her that the union would not take her grievance against the company to arbitration. Id. (citing Dkt. No. 5-1 at 10).

The plaintiff also alleges that MCTS exhibited bad faith. Id. The plaintiff states that in a meeting on February 9, 2021, Mick Jarvis[1] (an MCTS employee) informed her that MCTS had planned to terminate her on November 18, 2020 based on the November 17, 2020 incident. Id. The plaintiff says that Jarvis stated that because the plaintiff was out sick on November 18, 2020 and company practice was not to terminate an employee on sick leave, she was not terminated until December 7, 2020 (the day she returned to work). Id. at 6–7. The plaintiff alleges that this "confirms and proves" that the defendants adhere to the contract between MCTS and Local 998 "[w]hen it's workable for their needs but not for the Plaintiff." Id. at 7. The plaintiff also alleges that MCTS "slandered and defamed" her character by terminating her employment. Id. at 7.

For relief, the plaintiff seeks judgment against the defendants, damages and costs. Id. at 9.

---

[1] In the caption of the complaint (Dkt. No. 1 at 1) and the description of the defendants (Dkt. No. 1, page 2 ¶8), the plaintiff spells this defendant's surname "Jarvic."

7

C. Analysis

The plaintiff appears to make several employment-related claims. She appears to claim that MCTS discriminated against her by treating her differently from other employees—she says that employees who had dangerous encounters with passengers were given training in how to deal with those situations, while she was not. She says that employees who had substance abuse issues were given treatment and returned to their jobs, while she was fired. She says that the state of Wisconsin provides anger management treatment, which she did not received. All these allegations sound like claims of employment discrimination. To state a claim in federal court, however, the plaintiff must allege that her employer discriminated against her for a prohibited reason—such as race, gender, age, disability or religion.

The plaintiff mentions her age (66), although she does not specifically allege that MCTS discriminated against her due to her age. The Age Discrimination in Employment Act (ADEA) prohibits employment discrimination on the basis of age. 29 U.S.C. §623. To establish a *prima facie* case of age discrimination under the ADEA, the plaintiff must show that (1) she was in the protected age group of forty or older, (2) she was performing her job satisfactorily, (3) she was discharged and (4) substantially younger, similarly situated employees were treated more favorably. Chiaramonte v. Fashion Bed Grp. Inc., 129 F.3d 391, 398 (7th Cir. 1997), cert. denied, 523 U.S. 1118 (1998). The plaintiff alleges that she currently is sixty-six years old, which would place her in the age group protected by the ADEA at the time of her

8

termination. She has not alleged, however, that she was performing her job satisfactorily or that younger, similarly situated employees were treated more favorably than she. The plaintiff says in the amended complaint that she received twenty disciplinary "write-ups" during the seventeen months of her employment with MCTS. She also alleges that she was "discharged for performance[]" rather than "misconduct." Dkt. No. 5 at 8. She says that at the February 24, 2021 grievance meeting, MCTS employee Nate Holton said he had "never seen a record of negative customer interactions that can match that of [the plaintiff]." Id. at 4. Not only has the plaintiff not alleged that she was performing well or meeting her employer's expectations—she has described facts demonstrating that she was *not* performing well or meeting her employer's expectations. Although the plaintiff has alleged that other employees were not disciplined after having dangerous interactions with passengers, she has not alleged that those employees were younger than she or that their disciplinary records were similar to hers. The plaintiff states that she had been asking for "help," but she does not explain what help she had requested or for what reason. Id. at 8. And under the ADEA, an employer has no duty to provide reasonable accommodations to an employee because of her age. Johnson v. ExxonMobil Corp., 426 F.3d 887, 893 (7th Cir. 2005), as amended (Nov. 21, 2005).

The plaintiff also mentions that MCTS overlooked medical records on file of her being disabled. The Americans with Disabilities Act (ADA) prohibits employment discrimination on the basis of disability. 42 U.S.C. §12112. To

9

allege disability discrimination under the ADA, the plaintiff must allege that (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) she suffered from an adverse employment action because of her disability. Hoppe v. Lewis Univ., 692 F.3d 833, 839 (7th Cir. 2012). The amended complaint does not establish that the plaintiff is disabled within the meaning of the ADA. "The ADA defines 'disability' as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 781 (7th Cir. 2007) (quoting 42 U.S.C. §12102(2)). The plaintiff has not identified a physical or mental impairment that substantially limits a major life activity. She states that there were "medical records on file" that she is disabled. Dkt. No. 5 at 8. In support, she attached to the amended complaint a doctor's note stating that "[d]ue to prior surgical history, she may require frequent or more urgent restroom breaks." Dkt. No. 5-1 at 12. The amended complaint does not elaborate on the plaintiff's "prior surgical history" or her medical condition at the time she worked for MCTS. To state a claim under the ADA, the plaintiff needed to allege what impairment she had that caused her to require "frequent or more urgent restroom breaks" and how that impairment substantially limited a major life activity. See Burnett v. LFW Inc., 472 F.3d 471, 483–84 (7th Cir. 2006) (medical diagnosis alone is insufficient to establish existence of ADA-covered disability).

10

Case 2:23-cv-01719-PP   Filed 10/23/24   Page 10 of 18   Document 7

Even if the court assumes that the plaintiff met the definition of "disabled" under the ADA, she has not demonstrated that she was qualified to perform the essential functions of her job. As the Seventh Circuit has stated,

> [T]he ADA does not shelter disabled individuals from adverse employment actions if the individual, for reasons unrelated to his disability (such as a poor work ethic, carelessness, bad attitude, insubordination or unprofessional demeanor), is not qualified for the job or is unable to perform the job's essential functions or fulfill the requirements of the position as prescribed by the employer or "fails to meet his employer's expectations.

Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 862 (7th Cir. 2005) (collecting cases). As discussed above, the fact that the plaintiff received twenty disciplinary write-ups over the course of her seventeen months of employment suggests that she was not qualified for the job, was unable to perform the job's essential functions or failed to meet the employer's expectations. To the extent that the plaintiff claims she received discipline because she needed unspecified "help" from MCTS, the amended complaint does not explain what "help" or accommodation the plaintiff needed, whether it was reasonable or whether it was for a disability covered by the ADA.

The plaintiff alleges that during the November 17, 2020 incident—when she asked the passenger to exit from the rear door of the bus—she was exercising her religious beliefs as a Jehovah's Witness. Under Title VII of the Civil Rights Act, to state a claim for religious discrimination, the plaintiff must show "(1) that [s]he was subjected to some adverse employment action; (2) that . . . [her] job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a

11

discriminatory motive." Porter v. City of Chicago, 700 F.3d 944, 954 (7th Cir. 2012) (quoting Sattar v. Motorola, Inc., 138 F.3d 1164, 1169–70 (7th Cir.1998)). Again, the plaintiff has not alleged that her job performance was satisfactory. Even if she had, she has not alleged that MCTS knew that she was a Jehovah's Witness, or that it knew that her faith required her to follow work rules. Nor has she alleged any facts showing that MCTS's motive in terminating her was religious discrimination. She has not alleged that the reason other employees were treated differently than she was because of her religion, or that the other employees were treated better because they were not Jehovah's Witnesses.

These are all reasons that the plaintiff has not stated an employment discrimination claim against MCTS. The plaintiff also cannot state an employment discrimination claim against the individual defendants because "Title VII authorizes suit only against the employer. Individual people who are agents of the employer cannot be sued as employers under Title VII." Passanati v. Cook County, 689 F.3d 655, 662 n.4 (7th Cir. 2012); Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995) (holding that "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer").

The court has concluded that the plaintiff has not stated any statutory claims for employment discrimination (and wrongful termination is a form of employment discrimination). There is, however, another possible way for the plaintiff to assert a claim against MCTS. A federal statute—42 U.S.C. §1983—allows a person to sue someone who violations her constitutional rights while

12

acting under "color" of state law. To state a claim under §1983, a plaintiff must allege that someone deprived her of her rights under the Constitution or laws of the United States and that the person who deprived her of those rights was "acting under color of state law." Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted). "Acting under color of state law" usually refers to a local, county or state employee. "Milwaukee County contracts with [Milwaukee Transit Services, Inc.], a private nonprofit company, to operate the Milwaukee County Transit System." Perkins v. Milwaukee County, 781 F. App'x 538, 541 (7th Cir. 2019). "MTS . . . employs all transit staff." Id. The Seventh Circuit has held that "MTS . . . may be sued under § 1983." Id. at 542 (citing Papapetropoulous v. Milwaukee Trans. Servs., Inc., 795 F.2d 591, 597 n.9 (7th Cir. 1986)).

To state a §1983 claim against the individual employees of MCTS, the plaintiff must allege that they deprived her of a constitutional right. The plaintiff alleges that she wanted and needed the job at MCTS. Dkt. No. 5 at 5. She also implies that she was fired even though she was following the rules. Those allegations sound like a claim that the employees involved in her discharge terminated her job in violation of her federal due process rights. To state such a claim, the plaintiff first must establish that she had a property interest in continued employment (a determination made by looking at state law—in this case, Wisconsin law). Schultz v. Baumgart, 738 F.2d 231, 234 (7th Cir. 1984). If the plaintiff alleges the existence of a property right, she then

must demonstrate that she was discharged without the procedural protections conferred by the due process clause. Id. at 235.

The amended complaint does not state a §1983 claim against the individual employees for violation of the plaintiff's due process rights. It does not allege that the plaintiff had a property interest in continued employment under Wisconsin law. It does not allege that the MCTS employees failed to give her the procedural protections required by the due process clause (at the very least, notice of the fact that she was being fired and the reason for it and a meaningful opportunity to respond, Baumgart, 738 F.2d at 235). In fact, the amended complaint implies that some of the individual defendants *did* give the plaintiff due process—it appears that may have been as many as two post-termination grievance hearings at which Holton and Jarvic (or Jarvis) explained why MCTS terminated the plaintiff. (The plaintiff makes no specific allegations against defendant MCTS employees Ma, Minor and Brown.)

Nor does the amended complaint state a §1983 claim against MCTS. While it is not clear that the plaintiff has sued the correct entity—MTS likely is the appropriate defendant—to state a §1983 claim against a "municipality," instead of a person, the plaintiff must allege that the constitutional violation was "caused by a governmental 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly to said to represent official policy.'" First Midwest Bank Guardian of Estate of LaPorta v. City of Chi., 988 F.3d 978, 986 (7th Cir. 2021) (quoting Monell v. Dep't of Soc. Serv's, 436 U.S. 658, 694 (1978)). The amended complaint does not allege how the

14

plaintiff's due process rights were violated, and it does not allege that MCTS (or MTS) had a policy, custom or practice of violating employees' due process rights.

The amended complaint alleges "bad faith" and breach of contract against Local 998 and MCTS. "When union members sue their employer for breach of contract . . . they must also state a prerequisite claim of breach of their union's duty of fair representation." Yeftich v. Navistar, Inc., 722 F.3d 911, 914 (7th Cir. 2013). "This is because ordinarily, union members must first use the grievance procedures specified in the CBA rather than directly sue the employer; only when the union has breached its duty to fairly represent the union members in that grievance process may the union members bring a claim against their employer." Id. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Id. at 916 (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)).

The only allegations that the plaintiff brings against Local 998 relate to the timeliness of the notice she received of the charges against her. It is unclear what the plaintiff alleges she was not timely notified about. The exhibit she cites in support relates to the union's decision not to arbitrate her grievance. If the plaintiff believes she was not timely notified about MCTS's intent to discipline her for the November 17, 2020 incident, the allegations in the complaint do not support such a claim. The amended complaint's quoted language from the Local 998 collective bargaining agreement states that the

15

notice period does not include "time off for sickness." The plaintiff was out sick after the November 17 incident and was not discharged until she returned to work. The face of the complaint does not support a finding that Local 998 failed to timely notify the plaintiff of the disciplinary action against her. To the extent that the plaintiff takes issue with the union's decision not to arbitrate her grievance, that alone does not constitute bad faith. Yeftich, 722 F.3d at 916 (stating that "declining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation"). The plaintiff's statement that the union acted in bad faith, unsupported by specific factual allegations raising an inference of bad faith, is not enough. The amended complaint contains no allegations suggesting that Local 998 breached its duty of fair representation, and so the plaintiff cannot state a breach of contract claim against MCTS. Yeftich, 722 F.3d at 914.

"It is . . . axiomatic that district courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the compliant when it appears that by doing so the pro se litigant would be able to state a meritorious claim." Donald v. Cook Cnty. Sheriff's Dep't, 95 F.3d 548, 555 (7th Cir. 1996). Even liberally construing the plaintiff's original, six-page complaint, the court concluded that it did not state a claim. It gave the plaintiff the opportunity to amend her complaint to more clearly state her claims. The court provided specific guidance to the plaintiff on how to amend her complaint to state a claim for employment discrimination or wrongful termination. Dkt. No. 4 at 6–9. The court instructed the plaintiff to file

16

an amended complaint that complied with the guidance in its screening order. Id. at 10. The plaintiff's nine-page amended complaint and twelve pages of attachments have not remedied the deficiencies in her original complaint. The court understands that the plaintiff believes that MCTS should have helped her improve her job performance, and that it fired her unfairly. It also understands that the plaintiff believes that the union failed her. But to state a claim in federal court, the plaintiff must allege facts showing that the defendants violated some federal law or federal constitutional provision. Neither the original complaint nor the amended complaint allege such facts. The court will not give the plaintiff a second opportunity to amend the complaint. It will dismiss this case without prejudice.

**II. Conclusion**

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which this federal court can grant relief. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, she should be aware that the appellate filing fee is $605. If the plaintiff seeks to proceed on appeal without

17

prepaying the appellate filing fee, she must file a motion *in this court*. See Fed. R. App. P. 24(a)(1).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 23rd day of October, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**